AUTO BROKERAGE COMPANY, INCORPORATED, APPELLANT, v. SAMUEL F. WILSON, RESPONDENT.

Argued November 2, 1925—Decided March 26, 1926.

On appeal from a judgment of the Supreme Court (Essex Circuit), in which Judge Dungan, before whom the case was tried, delivered an opinion as follows:

"The parties to this suit waive a jury, and it thereupon becomes the duty of the court to decide both question of law and of fact. The questions of law, of course, must be those which usually pertain to a case of this kind. The questions of fact which the court will decide are those which should be decided by a jury, if a jury were present.

"The plaintiff relies upon two grounds of attack—first, that an order of the court was issued in a suit by one Kaplan against the plaintiff in this suit for replevin; that a bond was given to the sheriff to replevin the automobile in question, and the plaintiff in this suit was nonsuited, and thereupon an order was made directing the sheriff to retake possession of the automobile and return it to the plaintiff in this suit, which he has failed to do, and the other point is that the sheriff failed to take a proper bond, as he was required to do under the Replevin act, section 6 (*Comp. Stat.,* p. 4369), and it is insisted on behalf of the plaintiff that each of these duties is an absolute duty. I do not so regard it, however, in either case. I think the duty of the sheriff is fully performed when he has done what can reasonably be done, either to take possession of and return the goods, or to take a proper bond. The admission in the case is that after the judgment of nonsuit and the receipt by the sheriff of the order to take possession and return the goods, he made a reasonable attempt to find and return these goods but was unable either to take possession or return them. The statute does not contemplate that the sheriff should keep these goods continuously where he can put his hands upon them and return them, if the plaintiff in the case in which the writ of replevin is issued should not recover. On the other hand, he is obliged by the statute, upon receipt of a proper bond, to deliver the goods to the plaintiff in the suit. This he did in this case, and I think, therefore, his full duty was performed, so far as taking possession and returning the goods was concerned.

"The second question is, Did he take a proper bond? The statute provides that the sheriff shall take from the plaintiff a bond with sufficient surety in double the value of the

goods and chattels mentioned in the writ, and then the last portion of the section says that: 'If any sheriff shall take security otherwise'—and here are the important words—'or neglect to take sufficient surety, he shall answer for the value of the goods and chattels.' I find nothing in the act, nor has anything been called to the attention of the court, which requires that such bond shall have the approval of either a judge of the court or a Supreme Court commissioner. The obligation to take a sufficient bond rests upon the sheriff, and the penalty for failure to take a sufficient bond rests upon him.

"It is urged that section 8 is applicable to a sheriff. This section does require the approval of one of the judges of the court out of which the writ shall issue, or a Supreme Court commissioner, but that section relates not to sheriffs but to coroners only. So that the suggestion that the sheriff, in accepting a bond which has been approved by a Supreme Court commissioner, is relieved of liability, is without foundation, but he must determine whether or not it is a good and sufficient bond, and the penalty is upon him for a failure to take a good and sufficient bond.

"The question, therefore, which remains is, 'Did the sheriff take a good and sufficient bond?' That question is to be decided in the light of foresight, and not in the light of hindsight. It turns out now that it was not a good and sufficient bond because the surety upon the bond was under age and repudiated his obligation when he became twenty-one years of age, and repudiated it upon the stand here to-day. It is not necessary to express my opinion of a young man who starts life that way, who has absolutely no regard for his moral obligations at all, but chooses to hide behind his minority. But that is neither here nor there, what my opinion of this young man is and what he will probably turn out to be, if this is the way he expects to go through life. But I cannot resist the temptation to express my contempt for such a young man. As I have already said, the question of whether or not this was a good and sufficient bond must be decided in the light of foresight. When this bond

came to the sheriff, for anything that appears in the bond
or for any investigation which a reasonable man might make,
should the court now decide that it was a proper bond? It
is true that the sheriff might have taken the oath to this
bond, but it is not required that he should do so. It may be
taken by another, not only by a Supreme Court commissioner,
but by anyone who is authorized to take an oath.

"When we come to examine the bond we find that the bond
is in proper form and we find the affidavit to be in the
usual form, and sometimes, in determining that, we have
recourse to the forms which are printed in our book—our
form books. Of course, we are misled by them sometimes,
and it may be that this form would be a better form if it
had, in addition to the matter which is in this affidavit, an
oath that the person making it was twenty-one years of age.
As I have said, another may take the oath, and when another
takes the oath the sheriff has not an opportunity of seeing
the person making it. It may be that if the person signing
a bond of this kind should be very youthful in appearance, and
if he came before the sheriff, he would be put upon inquiry.
Of course, that cannot be said when the person making the
oath makes it before somebody else, as is the case here, but
as this young man appears on the stand here to-day he is
of mature appearance. There is nothing in his appearance
that would indicate to the court that at the time this oath
was taken, in November, 1922, he was not twenty-one years
of age. There is nothing in his appearance now which would
indicate but that his appearance at that time was such as to
indicate that he was twenty-one years of age. He looks like
a person at least twenty-five years of age. This oath, as I
have said, is in the proper and usual form, and my view is,
as I expressed at the outset of this decision, that the obliga-
tion of the sheriff is not an absolute one. If this bond, in this
form, had come to any of us, to any reasonable business man,
we would have approved it then, so far as the age of the
surety is concerned, and, therefore, the sheriff ought not to
be personally liable simply because the bond was not exe-
cuted before him, when the statute permits it to be executed
before another.

"My view is, from what I have said, that the sheriff did not neglect, in the light of foresight [and, of course, not hindsight], to take sufficient security, and that he is not now answerable for the value of these goods and chattels.

"This results in a verdict in favor of the defendant."

For the appellant, *Heine, Bradner & Laird* (*Palmer Bradner,* of counsel).

For the respondent, *Arthur T. Vanderbilt.*

PER CURIAM.

The judgment under review will be affirmed, for the reasons expressed in the opinion of Judge Dungan.

We, however, desire to call attention to the fact that it is not clear to us that the question whether the infant surety was liable on the bond under the rule in *La Rosa* v. *Nichols,* 92 *N. J. L.* 375, was raised in the court below, nor is it clear that the question was raised in this court. In any event, in the view we take of this case, that question does not now call for decision, and we express no opinion with respect thereto.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, MCGLENNON, KAYS, HETFIELD, JJ. 11.

*For reversal*—None.